UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

RAFAEL ANTONIO-MOSES SANTOS, JR.,

        Petitioner,

v.

MATT MACAULEY,

        Respondent.

_____/

Case No. 1:20-cv-1226

Honorable Robert J. Jonker

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

## I. Factual allegations

Petitioner Rafael Antonio-Moses Santos, Jr. is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. On April 11, 2018, Petitioner pleaded guilty in the Ingham County Circuit Court to delivery of methamphetamine, in violation of Mich. Comp. Laws § 333.7401(2)(b)(i), and carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227. On May 16, 2018, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10, to concurrent prison terms of 10 to 30 years for the delivery conviction and 2 years, 6 months, to 7 years, 6 months for the weapons convictions. Those sentences, in turn, are to be served consecutively to a string of sentences for which, apparently, Petitioner was on parole at the time he committed the most recent offenses.

On December 16, 2020, Petitioner timely filed his habeas corpus petition raising three grounds for relief, as follows:

> I. The trial court failed to impose a sentence that is proportionate to Petitioner's circumstances and the circumstances of the offense. The state appellate court's failure to correct Petitioner's disproportionate sentence is unreasonable and contrary to clearly established federal law, entitling Petitioner to resentencing.
>
> II. The consideration of a risk assessment at sentencing violates Petitioner's state and federal due process rights because the assessment is not proper sentencing information. The state appellate court's failure to correct this claim of error is unreasonable and contrary to clearly established federal law.
>
> III. The sentence [in] this case is invalid because the trial court did not exercise meaningful discretion as to maximum terms on non-mandatory life offenses pursuant to the habitual offender statutes. The state appellate court's failure to correct this claim of error is unreasonable and contrary to clearly established federal law.

(Pet., ECF No. 1, PageID.5-7.)

**II.     AEDPA standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

3

adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**III. Discussion**

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v.*

4

*Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner attacks his sentences as disproportionate, claiming that proportionality is required by *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017).  *Steanhouse,* however, is not a case about proportionality directly; instead, it is a case that sets out the requirement that a minimum sentence that is outside the Michigan sentencing guidelines range must be reasonable.  Therefore, *Steanhouse* is not applicable to Petitioner's case because Petitioner's sentence does not depart from the guidelines range.  (Pet'r's Br., ECF No. 2, PageID.19) ("Petitioner received a minimum sentence of 120 months, which is within [the] guidelines range.").

*Steanhouse* is only relevant to the extent that the supreme court based its definition of a reasonable sentence on the definition of proportionality from *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).  In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the

5

nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id*. at 335-37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] . . . essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's claims based on *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

Petitioner suggests, nonetheless, that the same proportionality principles are present in the United States Constitution's Eighth Amendment. In support of that proposition he quotes *Weems v. United States*, 217 U.S. 349, 367 (1910): "It is a 'precept of justice that punishment for

6

crime should be graduated and proportioned to [the] offense.'" (Pet'r's Br., ECF No. 2, PageID.19.) Petitioner's quote from *Weems* is misleading. At issue in *Weems* was not a sentence imposed by a state, or even the United States, but one imposed by the supreme court of the Philippines. Mr. Weems' crime was making two false entries in a "wages paid" logbook relating to lighthouse services. His punishment for that crime was significant:

> The minimum term of imprisonment is twelve years, and that, therefore, must be imposed for 'perverting the truth' in a single item of a public record, though there be no one injured, though there be no fraud or purpose of it, no gain or desire of it. Twenty years is the maximum imprisonment, and that only can be imposed for the perversion of truth in every item of an officer's accounts, whatever be the time covered and whatever fraud it conceals or tends to conceal. Between these two possible sentences, which seem to have no adaptable relation, or rather in the difference of eight years for the lowest possible offense and the highest possible, the courts below selected three years to add to the minimum of twelve years and a day for the falsification of two items of expenditure, amounting to the sums of 408 and 204 pesos. And the fine and 'accessories' must be brought into view. The fine was four thousand pesetas,—an excess also over the minimum. The 'accessories' we have already defined. We can now give graphic description of Weems's sentence and of the law under which it was imposed. Let us confine it to the minimum degree of the law, for it is with the law that we are most concerned. Its minimum degree is confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council. These parts of his penalty endure for the term of imprisonment. From other parts there is no intermission. His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicil without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him, and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty. No circumstance of degradation is omitted. It may be that even the cruelty of pain is not omitted. He must bear a chain night and day. He is condemned to painful as well as hard labor. What painful labor may mean we have no exact measure. It must be something more than hard labor. It may be hard labor pressed to the point of pain.

*Weems*, 217 U.S. at 365-366.

The measure of that punishment was not the United States Constitution. In *Weems*, the United States Supreme Court was interpreting the "cruel and unusual" punishment clause of the Bill of Rights of the Philippine islands. Moreover, the "precept of justice" referenced by Petitioner was not one adopted by the United States Supreme Court or by any court of the islands; it was a belief attributed to persons "who have formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths . . . ." *Weems*, 217 U.S. at 367.

The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.[1]

---

[1] The maximum penalty, as enhanced under the habitual offender statute, is one and one-half times the statutory maximum for a first-time offender. *See* MCL § 769.10. The statutory penalty for a first-time offender, however, is

8

Petitioner's sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Petitioner also complains that his sentence was not "based on relevant and individualized factors" and it "was not properly individualized." (Pet'r's Br., ECF No. 2, PageID.20-21.) The concept of an "individualized" sentence has been discussed by the United States Supreme Court, but as a "prevalent modern philosophy of penology," not a constitutional mandate. *Williams v. New York*, 337 U.S. 241, 247 (1949). Even Michigan Supreme Court authority discusses individualized sentencing as a principle of the modern view of sentencing, not a constitutional requirement. *See, e.g., People v. Triplett*, 287 N.W.2d 165, 166-67 (Mich. 1980); *see also People v. McFarlin*, 208 N.W.2d 504, 513 (Mich. 1973) ("The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential.").

Federal authority likewise concludes, with two possible exceptions not applicable here, [2] that individualized sentences are not constitutionally required. *Harmelin*, 501 U.S. at 995 ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties."); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (in a case holding that mitigating factors must be fully considered in death

---

mandatory; the enhanced maximum penalty for a second habitual offender is not. For the second habitual offender, the sentencing judge has the discretion to impose a maximum sentence bounded at the bottom by the statutory maximum and at the top by the enhanced maximum. *People v. Bewersdorf*, 475 N.W.2d 231, 235 (Mich. 1991).

[2] The two possible exceptions are a sentence of death, and a sentence of life imprisonment without possibility of parole for a juvenile offender—which is like "the death penalty itself." *Miller v. Alabama*, 567 U.S. 460, 470 (2012).

penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."). The Sixth Circuit has acknowledged that "there is no constitutional right to individualized sentencing in non-capital cases." *United States v. Odeneal*, 517 F.3d 406, 415 (6th Cir. 2008); *see also United States v. Graham*, 622 F.3d 445, 454 (6th Cir. 2010); *Thomas*, 49 F.3d at 261; *United States v. Gardner*, 931 F.2d 1097, 1099 (6th Cir. 1991); *United States v. Ruffin*, 783 F. App'x 478, 483 (6th Cir. 2019); *Hynes v. Birkett*, 526 F. App'x 515, 522 (6th Cir. 2013); *United States v. Holmes*, 11 F. App'x 408, 409 (6th Cir. 2001); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990); *but see United States v. Corum*, 354 F. App'x 957, 963 (6th Cir. 2009) ("The government and Defendant both raise arguments about whether there is a constitutional right to an individualized sentence for non-capital defendants. It is not fully settled whether there is such a constitutional right, though some precedent in this Circuit may have suggested otherwise."). Therefore, Petitioner's claim that he was denied an individualized sentence is not cognizable on habeas review.

Petitioner next contends that his sentences violated federal due process because the sentencing judge considered a "Correctional Offender Management Profiling for Alternative Sanctions" (COMPAS) risk assessment. (Pet'r's Br., ECF No. 2, PageID.24.) Petitioner explains the nature of the COMPAS assessment as follows:

> COMPAS is a statistically-based risk assessment "specifically developed to assess many of the key risk and needs factors in adult correctional populations and to provide decision-support information regarding the placement of offenders in the community." *Brennan, Dietrich, & Olive*; *Core COMPAS Manual and Technical Report* (2008). Criminal justice practitioners interview offenders and elicit answers that inform "key risk factors." In addition to biographical information, offenders are assessed on the basis of static historical data such as age of first offense and prior criminal history. Additionally, dynamic factors such as substance abuse and the amount of crime in one's neighborhood are factored into the assessment.

10

> *Brennan, Dietrich, & Olive*; *Core COMPAS Manual and Technical Report* at 5 (2008).

(Pet'r's Br., ECF No. 2, PageID.25.)

Petitioner claims that the COMPAS assessment of future risk is unreliable and that the consideration of such unreliable evidence at sentencing violates due process. Petitioner cites state court and federal courts of appeals authority for that proposition. (Pet'r's Br., ECF No. 2, PageID.25.) Even if the state appellate court's rejection of Petitioner's claim is contrary to federal circuit court authority, this Court may not grant habeas relief. To warrant relief, the state court's determination must be contrary to, or an unreasonable application of, clearly established federal law. Clearly established federal law consists of only the holdings of the United States Supreme Court. *Williams*, 529 U.S. at 412; *Bailey*, 271 F.3d at 655.

Under clearly established law, a court violates due process when it imposes a sentence based upon materially false information. *United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447.

Petitioner does not claim that the COMPAS assessment was false, he claims it was unreliable—scientifically unreliable evidence regarding dangerousness. In *Barefoot v. Estelle*, 463 U.S. 880 (1983), the United States Supreme Court rejected the claim that the admission of such evidence at sentencing violated due process. In *Barefoot*, the Supreme Court considered a death-row inmate's argument that psychiatric testimony regarding his future dangerousness was unreliable and, therefore, violated his due process rights. In resolving that claim, the Court quoted with approval the analysis of Justice Stephens from *Jurek v. Texas*, 428 U.S. 262 (1976):

11

> "It is, of course, not easy to predict future behavior.  The fact that such a determination is difficult, however, does not mean that it cannot be made.  Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system.  The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct. Any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose.  For those sentenced to prison, these same predictions must be made by parole authorities.  The task that a Texas jury must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice.  What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine.  Texas law clearly assures that all such evidence will be adduced."

*Barefoot*, 463 U.S. at 897.  Moreover, it does not matter whether the COMPAS risk assessment is considered "expert" or "lay" testimony.  Although *Barefoot* involved the expert testimony of psychiatrists, *Jurek* involved lay testimony regarding future dangerousness.  *Id*. ("Although there was only lay testimony with respect to dangerousness in *Jurek*, there was no suggestion by the Court that the testimony of doctors would be inadmissible.").

In light of this authority, Petitioner cannot show that the state court of appeals' rejection of his claim is contrary to, or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to habeas relief on his due process claim regarding admission of the COMPAS risk assessment at sentencing.

Finally, Petitioner contends that his maximum sentence on the methamphetamine delivery charge is unconstitutional because the judge imposed the greatest possible enhanced maximum sentence "without consideration of whether a lesser maximum term would be appropriate." (Pet'r's Br., ECF No. 2, PageID.29.)  Petitioner cites no federal authority to support his claim that the sentencing judge's failure to explain his exercise of discretion within the allowed statutory maximum range of 20 to 30 years implicates his constitutional rights.  Instead, Petitioner

cites state authority premised on state, not federal, principles, and then attempts to tie that authority back to his claim that the resulting sentence was disproportionate.

There are limited circumstances under which due process requires a judge to explain a sentence, even a sentence within a range dictated by sentencing guidelines or statutory maximums. For example, in *North Carolina v. Pearce*, 395 U.S. 711 (1969), the Supreme Court explained:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.

*Pearce*, 395 U.S. at 725-26 (footnote omitted). That is certainly not Petitioner's circumstance. Moreover, if the requirement is only acknowledged for such a comparatively rare circumstance as a resentencing after a successful attack on the initial conviction or sentence, it is obvious that due process does not require such an explanation generally. Petitioner offers no authority to suggest otherwise. Accordingly, he has failed to demonstrate that the state court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law. Therefore, he is not entitled to habeas relief on his challenge to the maximum sentence imposed.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   January 5, 2021              /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE